

**U.S. Department of Justice**

Office of the United States Trustee
*Southern District of New York*

*33 Whitehall Street*     *(212) 510-0500*
*21st Floor*     *Fax: (212) 668-2255*
*New York, New York 10004*

April 10, 2017

<u>VIA E-MAIL</u>

Honorable James L. Garrity, Jr.
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004
garrity.chambers@nysb.uscourts.gov

      Re:     **Artisanal Fromagerie & Bistro, LLC**
                  Case No. 16-12337 (JLG)

Dear Judge Garrity:

       I am writing in accordance with the Court's instructions at the March 24, 2017 hearing on the above-referenced debtor's (the "Debtor's") motion to dismiss its Chapter 11 case (the "Motion to Dismiss"). ECF Doc. No. 31. Specifically, the Court directed that, prior to the hearing scheduled for Tuesday, April 11, 2017, the United States Trustee investigate whether the Debtor's motion to dismiss should be granted.

       The Court's concern arose from the allegations made in the *Opposition to Debtor's Motion to Dismiss the Chapter 11 Case and Cross-Motion to Convert to a Case under Chapter 7* (the "Motion to Convert"), ECF Doc. No. 42, filed by PPF OFFTWO Park Avenue Owner LLC, the debtor's landlord (the "Landlord"). In the Motion to Convert, the Landlord alleged that, rather than dismissing the case, the Court should convert it, so that a Chapter 7 trustee could investigate a possible fraudulent conveyance action, the Debtor's motion to dismiss should be granted. Subsequent to the filing of the Motion to Convert, however, the Landlord has consented to the relief sought in the Motion to Dismiss. Upon review of the facts of the case, notwithstanding the Landlord's allegations in the Motion to Convert, the United States Trustee is of the opinion that the Debtor's motion should be granted.

Background

From the filing of the Debtor's petition on August 12, 2016 (the "Petition Date"), though the Debtor has several creditors, this case has focused primarily on two parties, the Debtor and the Landlord. Shortly after the Petition Date, on August 24, 2016, the Landlord moved to lift the automatic stay or to dismiss the case. ECF Doc. No. 10. Subsequently, on September 19, 2016, the Court "so ordered" a Stipulation between the Debtor and the Landlord (the "September 2016 Stipulation"). ECF Doc. No. 22. Under the terms of the September 2016 Stipulation, the Debtor agreed, *inter alia*, to vacate the premises. *See* September 2016 Stipulation, ¶ 4. The Debtor has represented that it surrendered the premises on November 1, 2016. *See* Motion to Dismiss, ¶ 7.

The Motion to Dismiss and the Motion to Convert

On November 14, 2016, less than two weeks after it had vacated the premises, the Debtor filed the Motion to Dismiss. ECF Doc. No. 42. The Debtor argued, *inter alia*, that it had no free assets, that it had ceased to operate, and that the case "no longer had any bankruptcy purpose." Motion to Dismiss, ¶ 10.

The Landlord, however, opposed the Motion to Dismiss and countered with the Motion to Convert. The Landlord suggested in the Motion to Convert that "the Debtor's cash was transferred to [its principal] . . . while the Debtor was insolvent." Motion to Convert, ¶ 3. In addition, the principal allegedly transferred the Debtor's trade name and good will to Stephanie Schulman, a creditor, in consideration for the discharge of a prior debt. *Id.* The Landlord argued for the appointment of a chapter 7 trustee, who could investigate these alleged fraudulent conveyances. *Id.* Finally, the Landlord noted that the Debtor's schedules had listed substantial assets, including $1.2 million in furniture, fixtures, and equipment. *Id.* at ¶ 9. Further, the Debtor's listed secured claims were relatively small and were "secured by limited assets." *Id.* Thus, "the $1.26 million in disclosed assets [were] largely available to satisfy unsecured claims." *Id.*

The Agreement Among the Debtor, the Landlord and Stephanie Schulman

On March 20, 2017, the Landlord filed a Notice of Withdrawal of its Opposition to the Motion to Dismiss and of the Motion to Convert. ECF Doc. No. 48. Subsequently, in a letter filed with the Court on March 22, 2017 (the "March 22 Letter"), ECF Doc. No. 50, the Landlord explained its agreement with the Debtor (the "Agreement").

Under the Agreement, to which the aforementioned Stephanie Schulman (against whom the Landlord had a claim), was also a party, Ms. Schulman agreed to pay (from non-estate funds currently held in escrow) the Landlord in consideration for the Landlord's release of the Debtor, Ms. Schulman and certain entities affiliated with Ms. Schulman. *See* March 22 Letter, page 1. The Landlord also agreed to withdraw the Motion to Convert. Moreover, the aforementioned

releases are effective – and the Landlord will receive payment from Ms. Schulman -- only upon the dismissal of the Debtor's Chapter 11 case.  *See id.*

In the March 22 Letter, the Landlord explained that it now supports dismissal "so that [it] may be restored to those rights and remedies it has outside of bankruptcy," namely its "right to settle claims . . . arising under state law."  *Id.* at page 2.   To be clear, however, the Landlord pointed out that "no *estate* causes of actions are implicated by the settlement." (Emphasis added)

Analysis: Assets vs. Liabilities

Debtor's counsel has advised the United States Trustee that the picture of a solvent estate painted by the Landlord in the Motion to Convert is not accurate at present.   First, although the Debtor's Schedule B, ECF Doc. No. 10, listed the value of its furniture, fixtures and equipment at $1.2 million, this number (derived from a tax return) did not reflect actual value.   In fact, the United States Trustee understands that the Debtor had to abandon or otherwise dispose of this property.   The balance of the assets listed in Schedule B amounted to only $56,457.62 – far less than the amount of secured and unsecured priority claims in this case.   *See id.*, ECF Doc. No. 10, at page 10 of 44.

As to the Debtor's liabilities, as noted above, the schedules list secured claims in the amount of $44,149.10.   *See id.* at page 12 of 44.   Although the Schedules list the unsecured priority claim on the New York State Department of Finance in the amount of $811,146.64, the taxing authorities have filed secured and unsecured priority tax claims that amount to nearly $2.5 million.   According to the Schedules, general unsecured claims amount to $5,285,583.08.   *See id.* at pages 13, 17, 18 of 44.   Of this last amount, $4.5 million consists of the combined claims of Stephanie Schulman ($2.5 million), and the Landlord ($2 million).   *See id.* at pages 17, 18 of 44.

Of course, the asset that is not listed in the Debtor's Schedules relates to the potential fraudulent conveyance claims.   Although the Landlord raised the issue in the Motion to Convert, it would be up to a third-party, such as a chapter 7 trustee, to investigate such claims.   The question is whether such an investigation would be likely to bear fruit – especially for the general unsecured creditors.   The United States Trustee believes that it is unlikely to result in a distribution to the unsecured creditors.

In addition to running the litigation risk that a Chapter 7 trustee may recover little or nothing for the estate – while incurring administrative expenses – any meaningful recovery would benefit only the secured and unsecured priority creditors.  Although the United States Trustee has insufficient knowledge of the facts and circumstances surrounding the alleged fraudulent conveyances to determine whether they are likely to succeed on the merits, the United States Trustee is unaware of any allegation, let alone evidence, that the aggregate recovery from a fraudulent conveyance action will inure to the benefit of the unsecured creditors.

Moreover, the Agreement – under which the Landlord's claim would be satisfied with non-estate funds – is contingent upon the dismissal of the Chapter 11 case.   March 22 Letter, page 1.   In other words, the conversion of the case to Chapter 7 would abrogate the Settlement.  Finally, the United States Trustee is aware of no party-in-interest that objects to dismissal.

Conclusion

Although the allegations contained in the Motion to Convert are cause for concern, the United States Trustee is aware of no compelling evidence to support a fraudulent conveyance claim.   Balancing the risks against the rewards of conversion, the United States Trustee recommends that the Debtor's motion to dismiss its Chapter 11 case be granted.

If the Court has any questions, please contact me.   Thank you.

Respectfully,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE
Region 2

By: /s/ Richard C. Morrissey
Richard C. Morrissey
Trial Attorney


cc: Robert M. Sasloff, Esq. (via e-email)
Mark Somerstein, Esq. (via e-mail)